**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**GOOD DEED 317, LLC,**<br><br>**Debtor.** | **CHAPTER 11**<br><br>**CASE NO. 20-71227-PMB** |

**FIRST MODIFICATION TO SECOND AMENDED PLAN OF REORGANIZATION**

COMES NOW, Good Deed 317, LLC ("Debtor") and files this *First Modification to Second Amended Plan of Reorganization* ("Modification"). In support of the Modification, Debtor shows the Court as follows:

1. On December 11, 2020, Debtor filed its "Amended Disclosure Statement for Plan of Reorganization" (Doc. No. 35) and "Amended Plan of Reorganization" (Doc. No. 36).

2. On February 5, 2021, Debtor filed its "Second Amended Plan of Reorganization" (Doc. No. 58) (the "Plan").

**The Plan Modification and Legal Authority**

3. Debtor hereby modifies the Plan in accordance with §1121 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The changes do not materially or adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.

4. Article 4, Section 4.5 of the Plan shall be deleted in its entirety and replaced with the following:

**Class 5**: **Secured Claim of LV Atlanta, LLC**

Class 5 consists of the first priority secured claim of LV Atlanta, LLC ("LV"). As of February 1, 2021, LV holds a claim in the total amount of $12,729,151.36 which includes principal together with accrued and unpaid interest thereon, attorney's fees and other costs (such amount owed to LV plus interest, fees, and costs that are continuing to accrue and incur pursuant to the

Class 5 Loan Documents (as defined below) shall be referred to herein as the "Class 5 Secured Claim"). The Class 5 Secured Claim arises pursuant to that certain Promissory Note and Loan Agreement dated December 13, 2018. The Class 5 Secured Claim is secured by a first priority lien on the Real Property (*i.e.* that certain real property and improvements thereto located at 3133 Continental Colony Parkway, Atlanta, Georgia) pursuant to a Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 13, 2018 and recorded in the Fulton County, Georgia land records on December 14, 2108 in Deed Book 59525, Page 61 *et. seq.* ("Security Deed"). Debtor's Real Property in which LV holds a security interest as described in Security Deed also may be referred to herein as the "Class 5 Collateral." The Promissory Note, Loan Agreement and Security Deed and other ancillary documents are referred to herein as the "Class 5 Loan Documents").

On or about February 24, 2021, Debtor, Areu Studios, LLC, Ozzie Areu, Greenberg Georgia Film and TV Studio Holdings, LLC and LV entered into that certain Discounted Payoff Agreement (the "Discounted Payoff Agreement") whereby LV agreed to accept $12,500,000.00 (the "Discounted Payoff Amount") in satisfaction of the Class 5 Secured Claim, subject to the terms and conditions contained therein. The Discounted Payoff Agreement is attached hereto as Exhibit "A" and fully incorporated as if fully set forth herein. Among other things, the Discounted Payoff Agreement provides for the terms and conditions under which LV has agreed to accept the Discounted Payoff Amount. The Discounted Payoff Amount shall be paid via wire transfer to LV promptly following entry the Confirmation Order but, in any event, no later than March 25, 2021 (it being understood that time is of the essence). The Debtor shall not seek to extend the March 25, 2021 payment deadline for any reason whatsoever without the express written consent of LV. To the extent there is any conflict or inconsistency between the terms of the Plan and the Discounted Payoff Agreement, the terms of the Discounted Payoff Agreement shall control.

Upon receipt of the Discounted Payoff Amount, and consistent with the remaining terms of the Discounted Payoff Agreement, LV shall release its lien on and security interest in the Class 5 Collateral. It is anticipated that the Discounted Payoff Amount shall be funded by Arena Investors, L.P. (or an affiliate thereof) and the Real Property will be subject to a first position lien by Arena Investors, L.P.

In the event Debtor defaults on its obligations under Class 5 of the Plan, then, notwithstanding any contrary provision of the Plan: (i) LV shall be authorized to accelerate the Class 5 Secured Claim and exercise any and all of its rights and remedies under the Loan Documents and applicable law, including without limitation, the continuation of the Guarantor Suit (as defined the Discounted Payoff Agreement) and (ii) the Debtor shall not seek to reimpose the automatic stay or seek to enjoin on any basis whatsoever the exercise by LV of any and all rights and remedies provided for under the Loan Documents or Plan provided however, that LV shall disburse the proceeds, if any, in excess of the then outstanding Obligations in accordance with applicable law following any sale of the Real Property. Except as otherwise expressly provided for in this Plan or otherwise inconsistent with this Plan, all non-monetary provisions of the Loan Documents and all remedies available to LV under such Class 5 Loan Documents shall remain in full force and effect; provided that, unless and until there is an event of default under Class 5 of the Plan, LV shall forbear and be enjoined from the exercise of any rights or remedies under the Class 5 Loan Documents.

The holder of the Class 5 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

5. <u>Article 4, Section 4.6</u> of the Plan shall be supplemented as follows:

Pursuant to the Discounted Payoff Agreement attached hereto as Exhibit "A" and as set forth in Class 5 of the Plan, it is anticipated that the Class 5 Secured Claim shall be satisfied by payment from Greenberg through a funding commitment from Arena Investors, L.P. (or an affiliate thereof) ("Arena Funding"). The Real Property will remain subject to a first position security interest of Arena Investors, L.P. (or an affiliate thereof) in the approximate amount of $12,500,000.00 (the "Arena Investors First Position Lien"). The Class 6 Secured Claim shall be subordinate to the Arena Investors First Position Lien.

6. <u>Article 4, Section 4.8</u> of the Plan shall be deleted in its entirety and replaced with the following:

After the Confirmation Date, but except in the event of a default under Class 5 of the Plan, Debtor is authorized to sell or refinance its assets free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures"). In the event the applicable assets are subject to secured claims, Debtor is authorized to sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property "Release Amount." The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid at closing as follows: (i) first to cover any *ad valorem* property taxes associated with the Real Property and (ii) then secured claims in order of priority, to the extent of available proceeds. Any net proceeds from any such sale available after closing shall be paid to fund Debtor's other obligations as set forth in the Plan.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

7. Except as expressly set forth in this Modification, all terms and provisions of the Plan remain in full force and effect.

Submitted this 1st day of March, 2021.

**GOOD DEED 317, LLC**

By:  */s/ Ozzie Areu*
Name: Ozzie Areu
Title: Manager

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave, NE
Atlanta, Georgia 30308
(404) 564-9300
Attorney for Debtor in Possession

**EXHIBIT "A"**

## DISCOUNTED PAYOFF AGREEMENT

**THIS DISCOUNTED PAYOFF AGREEMENT** (the "Agreement") is made as of the 24th day of February, 2021 (the "Effective Date") by and among: **GOOD DEED 317, LLC**, a Georgia limited liability company (the "Borrower"), **AREU STUDIOS, LLC,** a Georgia limited liability company ("Areu"), **OZZIE AREU**, an individual resident of the state of Georgia ("Guarantor," and together with Areu and Borrower, the "Obligors"), **LV ATLANTA, LLC**, a Florida limited liability company ("Lender"), and **Greenberg Georgia Film and TV Studio Holdings, LLC**, a Delaware limited liability company ("Greenberg" and together with Lender and Obligors, the "Parties").

### RECITALS:

WHEREAS, Borrower and Lender are parties to (i) a Loan Agreement dated December 13, 2018 (the "Loan Agreement"), pursuant to which the Lender has made certain loans and other financial accommodations to Borrower (the "Loan"), which Loan is evidenced by (i) a Promissory Note dated December 13, 2018 in the original principal amount of $12,000,000 (the "Note"), (ii) a Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 13, 2018 (the "Security Deed"), and (iii) an Assignment of Leases and Rents, dated December 13, 2018 (the "Assignment of Rents");

WHEREAS, Areu and Lender are parties to a Pledge and Security Agreement dated December 13, 2018 (the "Areu Pledge");

WHEREAS, the Guarantor executed, in connection with the Loan, a Non-Recourse Carve-Out Guaranty Agreement on December 13, 2018 (the "Guaranty" and, together with the Areu Pledge, Loan Agreement, Note, Security Deed, Assignment of Rents, and each other document, instrument, and/or agreement executed in connection with, or otherwise related to the Loan, and each of the foregoing referenced documents as amended, restated, supplemented or otherwise modified from time to time (the "Loan Documents");

WHEREAS, capitalized terms used herein but not defined herein shall have the meanings given to such terms in the Loan Documents;

WHEREAS, Obligors defaulted under the Loan Documents by failing to timely and fully remit payment to Lender of certain sums due and owing thereunder;

WHEREAS, Borrower filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), on October 29, 2020 (the "Petition Date"), and such case is pending in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") under case number 20-71227-pmb (the "Borrower Bankruptcy Case");

WHEREAS, Areu filed a voluntary petition for relief under the Bankruptcy Code, on October 29, 2020, and such case is pending in the Bankruptcy Court under case number 20-71228-

113697918v1

pmb (the "Areu Bankruptcy Case" and together with the Borrower Bankruptcy Case, the "Bankruptcy Cases");

WHEREAS, the Bankruptcy Court entered certain interim orders approving the use of LV's cash collateral by Borrower and Areu (Borrower Bankruptcy Case Docket Nos. 24, 55, 70; Areu Bankruptcy Case Docket Nos. 29, 68, 82, collectively, the "Cash Collateral Orders");

WHEREAS, on account of the default of Obligors under the Loan Documents, Lender commenced that certain action against Guarantor and Mariana Areu in the Superior Court of Cobb County, State of Georgia on December 21, 2020 and such action remains pending under Case No. 20108182 (the "Guarantor Suit");

WHEREAS, Borrower filed that certain Second Amended Plan of Reorganization on February 5, 2021 [Dkt. No. 58] (the "Borrower Plan");

WHEREAS, Areu filed that certain Second Amended Plan of Reorganization on February 5, 2021 [Dkt. No. 71] (the "Areu Plan," and together with Borrower Plan, the "Plans");

WHEREAS, in connection with their respective Plans in the Bankruptcy Cases, Borrower and Areu have sought from Greenberg and Greenberg has agreed to provide, certain funding, a portion of which shall be used to satisfy the Loan, in exchange for which Greenberg or its assignee, shall receive certain equity interests in the reorganized Borrower and Areu entities (the "Transaction");

WHEREAS, in connection with the Transaction, Greenberg has sought certain third-party reports with respect to condition of the Property, including an appraisal, title examination and environmental assessment (the "Third-Party Reports").

WHEREAS, the Bankruptcy Court has scheduled hearings on March 11, 2012 to consider, among other things, confirmation of the Plans (the "Confirmation Hearings");

WHEREAS, the Obligors have requested, and the Lender has agreed to permit, a discounted payoff of the existing Loan in connection with confirmation of the Plans, subject to the terms of this Agreement.

**AGREEMENT:**

NOW, THEREFORE, the Parties each agree as follows:

1. Incorporation of Recitals. The Parties hereby incorporate the Recitals by reference as if fully set forth herein and agree that said Recitals are true and accurate.

2. Conditions Precedent to this Agreement. The following are conditions precedent to the Lender's obligations set forth in this Agreement:

2

113697918v1

(a) The Obligors and Greenberg shall each have executed and delivered to the Lender this Agreement in form and substance approved by the Lender in its sole and absolute discretion;

(b) The Lender shall have received the Discounted Payoff Amount (as defined below) in good funds in compliance with this Agreement; and

(c) With respect to Areu and Borrower only, such entities shall have obtained Bankruptcy Court approval with respect to this Agreement. This Agreement shall be filed as a supplement to and incorporated within the terms of the Borrower and Areu Plans, and each of the respective debtors shall seek Bankruptcy Court approval of this Agreement in connection with confirmation of the Plans.

3. <u>Acknowledgements</u>. The Obligors and Greenberg, as applicable, acknowledge and agree that:

(a) As of February 1, 2021, the Obligors are liable under the Loan Documents in the total amount of $12,729,151.36, which includes principal together with accrued and unpaid interest thereon, attorney's fees and other costs as of such date, (collectively, the "<u>Obligations</u>");

(b) On each calendar day, interest on each Loan accrues in the amount of $7,638.89;

(c) The Obligors owe the Obligations to the Lender without defense, setoff, counterclaim, or reduction of any kind;

(d) The liens, security interests, pledges, guaranties and assignments granted or assigned to Lender under or in connection with the Loan Documents are valid and enforceable by Lender, and are not subject to any defense, offset, deduction, or counterclaim of any kind or character whatsoever by or on behalf of the Obligors, and that such liens secure the Obligations;

(e) The Lender has a duly perfected first-priority security interest in the Property and all of the Borrowers' other assets described in the Loan Documents;

(f) The Obligors do not have, and hereby waive, any and all rights, claims, remedies, and/or defenses based on standing or lack thereof by the Lender to pursue enforcement actions and/or to otherwise enforce the Obligations against the Obligors, including, without limitation, any such rights, claims, remedies, and/or defenses based upon the assignment, transfer, hypothecation or other transfer of any interest in the Loan and/or any Loan Document;

(g) Each of the Loan Documents: (i) was duly authorized, executed, and delivered by the Obligors; (ii) is legal, valid, binding, and enforceable by the Lender against the Obligors, and (iii) is not subject to any defense, deduction, offset, or counterclaim of any kind or character whatsoever;

(h) The Lender's agreements set forth in this Agreement provide the Obligors with a substantial opportunity to protect their economic interests in their assets and an opportunity

3

113697918v1

to avoid significant economic detriment, and therefore constitutes substantial valuable consideration for the Obligors' agreements in this Agreement;

(i) Greenberg's agreements set forth in this Agreement provide it with material benefits relating to the Property and the acquisition of equity interests in the reorganized debtor entities, and therefore constitutes substantial valuable consideration for Greenberg's agreements in this Agreement;

(j) Except as expressly set forth in this Agreement: (i) all of the Lender's rights and remedies available under the Loan Documents and at law and in equity remain unchanged and available without restriction; (ii) the terms of the Loan Documents remain unchanged and in full force and effect and have not been amended, modified, or changed; and (iii) the obligations and duties of the Obligors to the Lender under the Loan Documents are not released, impaired, diminished or amended as a result of the execution and delivery of this Agreement; and

(k) The Lender has fully and timely performed all of its obligations and duties under the Loan Documents, and the Obligors waive any claim or defense that Lender or any of its predecessors in interest under the Loan Documents failed to fully and timely perform any or all of its obligations and duties under the Loan Documents. Lender has no obligation to (and has made no representations of any kind that it will) extend any other financial accommodations to the Obligors, and all actions taken by the Lender in connection with the Loan to date have been reasonable, in good faith, and appropriate under the circumstances, and within Lender's rights under the Loan Documents.

4. Discounted Payoff; Satisfaction of Loan.

(a) The Obligors shall pay, or cause Greenberg to pay, to the Lender by wire transfer the sum of $12,500,000 (the "Discounted Payoff Amount"). The Discounted Payoff Amount shall be paid via wire transfer to LV promptly following entry of one or more orders of the Bankruptcy Court confirming the Plans, but in any event no later than March 25, 2021 (**IT BEING UNDERSTOOD THAT TIME IS OF THE ESSENCE**).

(b) Greenberg shall provide copies of the Third-Party Reports to LV within one business day following receipt thereof and shall promptly forward to LV any subsequent information or documents associated with or pertaining to the Third-Party Reports, including without limitation any supplements, corrections, addendums or exhibits thereto.

(c) On February 23, 2021, Greenberg deposited into escrow with the law firm of Jones & Walden, LLC a deposit in the amount of $500,000 (the "Deposit"). The Deposit shall secure Obligors' performance under this Agreement. Upon entry of one or more orders of the Bankruptcy Court confirming the Plans, and otherwise consistent with this Section 4, the Deposit shall be remitted to Lender via wire transfer and fully applied to the Discounted Payoff Amount. In the event Obligors or Greenberg fail to timely remit to Lender the Discounted Payoff Amount, the Deposit shall immediately be deemed forfeited to Lender, and Jones & Walden LLC shall remit the Deposit to Lender via wire transfer within one business day following demand from Lender. Upon receipt of the forfeited Deposit, Lender shall fully apply the Deposit to the Obligations. The Deposit shall be non-refundable except as follows: any of the Third-Party Reports are determined

4

113697918v1

by Greenberg to contain a material issue or defect rendering the Property unsatisfactory in its current condition and resulting in Greenberg withdrawing from the Transaction (the "Transaction Termination"); provided however, that Greenberg provide notice of the Transaction Termination, along with any associated information or documents related thereto, to Lender no later than February 26, 2021 at 4:00 pm EST. The Deposit shall also be refundable in the event that the Bankruptcy Court does not confirm the Plans, provided however that Greenberg has not defaulted under any obligation in this Agreement or in connection with the Plans. In the event Greenberg provides such notice of Transaction Termination on or by 4:00 p.m. EST on February 26, 2021, or the Bankruptcy Court fails to confirm the Plans, then Jones & Walden LLC shall remit the Deposit back to Greenberg via wire transfer within one business day following demand from Greenberg.

(d)     On or before 12:00 p.m. on March 8, 2021, Greenberg shall provide to Lender (i) a signed commitment letter from Arena Investors, L.P. (or an affiliate thereof) or such other funding source as is mutually agreeable to Greenberg and the Obligors committing to fund at least the amount of the Discounted Payoff Amount in the time periods provided for hereunder and (ii) a draft closing statement. For the avoidance of doubt and notwithstanding any contrary provision herein, the inability of Greenberg to obtain financing for the Transaction is not a condition precedent to this Agreement or the obligations of Greenberg or the Obligors hereunder.

(e)     Upon Lender's timely receipt of (i) the entire Discounted Payoff Amount in good funds, and (ii) the satisfaction (or waiver by the Lender) of each of the conditions precedent set forth in Section 2 of this Agreement, then in such event, subject to all the provisions of this Agreement, (x) all obligations or liabilities of the Obligors under the Loan Documents will be deemed resolved, settled, satisfied, and discharged, (y) the Borrower may, after written confirmation by Lender of its receipt of the Discounted Payoff Amount, file all requisite UCC termination statements or other termination documents required to be filed to release Lender's security interest in the Property, and (z) Lender shall dismiss the Guarantor Suit with prejudice.(f)

(f)     Obligors and Greenberg expressly acknowledge and agree that any adequate protection payments remitted to LV pursuant to the Cash Collateral Orders shall reduce the Obligations but shall not reduce the Discounted Payoff Amount.

5.     Termination Events. Each of the following shall constitute a termination event (a "Termination Event"), resulting in the termination of the Lender's obligations under this Agreement and any right of the Obligors to pay the amounts set forth in Section 4 of this Agreement in full satisfaction of the Obligations, and entitling the Lender to immediately, without any further notice to the Obligors, exercise all of its rights and remedies under this Agreement, the Loan Documents or applicable law:

(a)     If the Obligors or Greenberg fail to pay the Discounted Payoff Amount in accordance with Section 4, **TIME BEING OF THE ESSENCE**;

(b)     If the Obligors, or any person or entity on their behalf, files suit or otherwise asserts, directly or indirectly, any claim against the Lender for any reason pertaining to the Loan Documents or the collateral for the Loan;

5

(c) If any representation or warranty of the Obligors shall be untrue or inaccurate in any material respect;

(d) If the Lender is, for any reason, compelled to surrender or disgorge all or a portion of the Discounted Payoff Amount because the payment or receipt of such amount is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off, or for any other reason, in which case, the Lender shall also be entitled to, among other things, reinstate its lien on the Collateral.

6. Representations and Warranties. To induce the Lender to execute, deliver, and perform this Agreement, the Obligors, and Greenberg where applicable, hereby warrant and represent to Lender that:

(a) The Obligors and Greenberg have read and fully understand the terms of this Agreement, and agree to be bound by them;

(b) The Obligors have, subject to Bankruptcy Court approval, full and complete authority to make the settlement provided herein and to execute this Agreement;

(c) The Obligors do not have any defenses, setoffs, claims, counterclaims, or causes of action of any kind or nature whatsoever against the Lender with respect to the Loan and Loan Documents; and, to the extent that the Obligors might otherwise have any of such claims, each Obligor waives, releases, and relinquishes any and all of such defenses, setoffs, claims, and counterclaims;

(d) The execution of this Agreement by the Obligors and Greenberg and the performance of their respective obligations hereunder will not violate or result in a breach or constitute a default under any agreements to which any Obligor or Greenberg, as applicable, is a party;

(e) The Obligors expressly warrant and represent that they have not assigned or in any way conveyed, transferred, or encumbered all or any portion of the claims against the Lender released herein; and

(f) The representations and warranties contained in this Section 6 shall survive the consummation of the transactions contemplated by this Agreement and any expiration or termination of this Agreement.

7. Release of the Lender and Waiver of Claims. Effective immediately as of the effective date of this Agreement, in consideration of, among other things, the Lender's agreements hereunder, the Obligors hereby agree not to sue upon or prosecute, and each Obligor hereby releases and discharges the Lender from, any and all claims and causes of action, in tort or contract or of any other kind or character, whether known or unknown and whether now existing or hereafter arising, that have at any time been owned, or that are hereafter owned, that arise out of any one or more circumstances or events that occurred prior to the date of this Agreement and that are related to the Loan, the Loan Documents, the Property, including without limitation, any usury claims, lender liability claims, claims arising under chapter 5 of the Bankruptcy Code or any

6

similar state law claim or cause of action, or any remedy available under the Loan Documents or otherwise. Moreover, the Obligors waive any and all claims now or hereafter arising from or related to any delay by the Lender in exercising any rights or remedies under the Loan Documents or available at law or equity. The Obligors expressly acknowledge and agree that the release of the Lender, as set forth in this Section 7, is not and shall not be construed as an admission of wrongdoing, liability, or culpability on the part of the Lender, or as an admission by the Lender of the existence of any claims of the Obligors against the Lender. The Obligors further acknowledge that, to the extent that any such claims may exist, they are speculative and unliquidated. In any event, the Obligors acknowledge and agree that the value to the Obligors of the Lender's covenants and agreements under this Agreement is in excess of, and constitutes more than, "reasonably equivalent value" for any and all claims and liabilities released by the Obligors hereunder. For purposes of this Section 7, the "Lender" shall mean the Lender and its affiliates, subsidiaries, shareholders, and "controlling persons" (within the meaning of the federal securities laws), and agents, and their respective successors, and assigns and each of their respective directors, shareholders, officers, agents, servants, servicers, employees, attorneys, financial advisors, affiliates, subsidiaries, predecessors, successors, and assigns and all persons, firms, corporations, and other representatives and organizations acting on behalf of any of them. All provisions of this Section 7 shall survive the consummation of the transactions contemplated by this Agreement and any expiration or termination of this Agreement.

    8.    <u>Miscellaneous</u>.

    (a)    This Agreement may be executed in any number of identical counterparts which, taken together, shall collectively constitute one (1) agreement; but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged. Delivery of an executed counterpart of this Agreement by electronic transmission (including in "pdf" or "tif" format) shall be as effective as delivery of a manually executed counterpart of this Agreement.

    (b)    Any future waiver, alteration, amendment, or modification of any of the provisions of the Loan Documents or this Agreement shall not be valid or enforceable unless in writing and signed by all Parties, it being expressly agreed that neither the Loan Documents nor this Agreement can be modified orally, by course of dealing, or by implied agreement. Moreover, any delay by the Lender in enforcing its rights after the occurrence of a Termination Event shall not be a release or waiver of the Lender's rights and remedies and shall not be relied upon by the Obligors as a release or waiver of such default.

    (c)    The Borrowers may amend Borrower's Plan and Areu may amend the Areu Plan, provided that no such amendment shall provide for, or have the effect of causing, a material change to Lender's rights and remedies under this Agreement, the Loan Documents or applicable law. Without limitation, the Parties acknowledge that Borrower and Areu may be required to amend their respective Plans in order to accommodate objections or change treatment to creditors other than Lender. The Parties further agree that, notwithstanding any other term or provision of this Agreement, the automatic stay of the Bankruptcy Code shall remain in effect until further order of the Bankruptcy Court and otherwise consistent with the provisions of the Plans. Borrower and Areu reserve all rights under the automatic stay. Notwithstanding the foregoing, neither Borrower nor Areu shall seek a continuance of the Confirmation Hearings to consider approval of

the Plans without the express written consent of the Lender which will not be unreasonably withheld.

(d) This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their heirs, executors, administrators, successors, legal representatives, and assigns; provided that, without the Lender's prior written consent, which may be granted or withheld in Lender's sole and absolute discretion, the Obligors and Greenberg may not assign any of their respective rights or obligations under this Agreement or under any of the Loan Documents.

(e) The headings of paragraphs in this Agreement are for convenience of reference only and shall not in any way affect the interpretation or construction of this Agreement.

(f) THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA AND FEDERAL LAW, AS APPLICABLE.

(g) The terms and conditions set forth in this Agreement are the product of joint draftsmanship of the Parties, and any ambiguities in this Agreement or any documentation prepared pursuant to or in connection with this Agreement shall not be construed against the Parties because of draftsmanship.

(h) For purposes of this Agreement and the Loan Documents, the addresses for notice to the Parties are set forth on their respective signature pages to this Agreement. All notices, requests, consents, and demands required or permitted hereunder shall be in writing, shall be given to the addressee at its address set forth on the applicable signature page to this Agreement. The Obligors and the Lender may change such address by sending written notice; however, no written notice of change of address shall be effective until the date of receipt thereof.

(i) The Parties hereto agree that any and all oral communications among or between any Parties hereto whether prior to or after the execution hereof are in the nature of settlement discussions and, except to the extent embodied in writing and signed by the Parties, no position taken and no statement made during such discussions shall be admissible as evidence in any court of law or in any hearing or legal proceeding pertaining in any way to this Agreement or any Loan Documents, or the transactions arising therefrom. In that regard, the Parties hereto agree to keep confidential any and all such discussions, making information relating thereto available only to those persons within their own organizations and such advisors as have a reasonable basis for knowing, or as required by applicable law or regulation.

9. FINAL AGREEMENT. EXCEPT AS SET FORTH HEREIN, THIS AGREEMENT, ALONG WITH THE LOAN DOCUMENTS, REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR ORAL OR WRITTEN, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS AMONG THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.

113697918v1

10. **JURY TRIAL WAIVER. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THE LOAN, ANY OF THE LOAN DOCUMENTS, THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH OR HEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS BETWEEN THE LENDER AND THE OBLIGORS, OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

[SIGNATURE PAGES FOLLOW]

9

113697918v1

**BORROWER:**

**GOOD DEED 317, LLC**

By: _____
Name: Ozzie Areu
Title: managing member
Address: 3133 Continental Colony Pky SW
Atlanta, 30331

STATE OF Georgia :
 : SS.
COUNTY OF Fulton :

The foregoing instrument was acknowledged before me this 25 day of February 2021 by Ozzie Areu, who is the Manager of Good Deed 317, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name and title is subscribed to the within instrument and acknowledged to me that he executed the same in her individual capacity, and that by his signature on the instrument the person executed the instrument.

_____
Signature of Notary Public

Margaret Glenn
Print Name of Notary Public

I am a Notary Public in the State of Georgia
and my commission expires on: 1/27/2024



[Borrower Signature to Discounted Payoff Agreement]

113697918v1

**GUARANTOR:**

_____
Name: Ozzie Areu
Address: 3133 Cantinental Colony Prkway
Atlanta 30331

STATE OF Georgia       :
                       : SS.
COUNTY OF Fulton       :

The foregoing instrument was acknowledged before me this 25 day of February, 2021 by Ozzie Areu, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name and title is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument the person executed the instrument.

_____
Signature of Notary Public

_____
Margaret Glenn
Print Name of Notary Public

I am a Notary Public in the State of Georgia
and my commission expires on: 1/27/2024

[Guarantor Signature to Discounted Payoff Agreement]

113697918v1

**OBLIGOR:**

**AREU STUDIOS, LLC**

By: _____
Name: Ozzie Areu
Title: Manager
Address: 3133 Continental Colony Pkwy Sw
Atlanta 30331

STATE OF __Georgia__ :
                     : SS.
COUNTY OF __Fulton__ :

The foregoing instrument was acknowledged before me this 25 day of February, 2021 by Ozzie Areu, who is Manager of Areu Studios LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name and title is subscribed to the within instrument and acknowledged to me that he executed the same in her individual capacity, and that by his signature on the instrument the person executed the instrument.

_____
Signature of Notary Public

Margaret Glenn
Print Name of Notary Public

I am a Notary Public in the State of __Georgia__
and my commission expires on: 1/27/2024



[Obligor Signature to Discounted Payoff Agreement]

113697918v1

Greenberg Georgia Film and TV Studio Holdings, LLC:

By: /s/ Steven Greenberg
Name: Steven Greenberg
Title: Managing Partner

STATE OF _____  :
                     : SS.
COUNTY OF _____ :

The foregoing instrument was acknowledged before me this \_\_\_ day of February, 2021 by _____, who is _____ of Greenberg Georgia Film and TV Studio Holdings, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name and title is subscribed to the within instrument and acknowledged to me that he executed the same in her individual capacity, and that by his signature on the instrument the person executed the instrument.

_____
Signature of Notary Public

_____
Print Name of Notary Public

I am a Notary Public in the State of _____
and my commission expires on:

**LENDER:**

**LV ATLANTA, LLC**

By: _____
Name: Camilo Niño
Title: Manager

STATE OF _Florida_ :
                       : SS.
COUNTY OF _Miami Dade_

The foregoing instrument was acknowledged before me this ___ day of February, 2021 by _____, who is _____ of LV Atlanta, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name and title is subscribed to the within instrument and acknowledged to me that he executed the same in her individual capacity, and that by his signature on the instrument the person executed the instrument.

_Adyari Morales_
Signature of Notary Public

ADYARI MORALES
Notary Public - State of Florida
Commission # GG 353467
My Comm. Expires Aug 6, 2023
Bonded through National Notary Assn.

_Adyari Morales_
Print Name of Notary Public

I am a Notary Public in the State of _Florida_ and my commission expires on:

[Lender Signature to Discounted Payoff Agreement]

113697918v1